**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **JONATHAN D. LONG,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:22-cv-00267** |
| | ) | **Judge Aleta A. Trauger** |
| **CITY OF CLARKSVILLE,** | ) | |
| **TENNESSEE and JOSHUA LAJOIE,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM

Before the court is the Motion to Dismiss Amended Complaint (Doc. No. 37), filed by defendants City of Clarksville, Tennessee ("City") and Joshua LaJoie. For the reasons set forth herein, the motion will be granted in part and denied in part. The claims against the City and those asserted against LaJoie in his official capacity, which are redundant of the claims against the City, will be dismissed with prejudice. The motion will be denied, insofar as it seeks dismissal of the claims against LaJoie in his individual capacity.

## I.    FACTUAL ALLEGATIONS

Defendant Joshua LaJoie is a police officer employed by the Clarksville Police Department ("CPD"), which is an agency operated and maintained by the City. (Doc. No. 33 ¶¶ 7–8.) LaJoie is sued in both his individual capacity and his official capacity. (*Id.* ¶ 8.) Plaintiff Jonathan Long is an adult resident of the City.

On January 11, 2021, Julie Long, plaintiff Jonathan Long's then-wife, obtained an *ex parte* Order of Protection ("OOP") against Jonathan Long, as a result of which he was not allowed visitation with his minor children. (*Id.* ¶¶ 9, 11.) Julie Long filed for divorce on January 25, 2021.

(*Id.* ¶ 10.) The plaintiff believed that his children were at risk of danger while in Julie Long's sole custody, due to her history of mental health issues and alcohol abuse. (*Id.* ¶ 12.)

On February 17, 2021, the plaintiff's divorce attorney, Nathan Hunt, entered into a contract with Covert Results, LLC ("Covert"), a licensed investigation agency, for the purpose of gathering information relevant to the plaintiff's pending divorce and child custody proceedings. (*Id.* ¶¶ 13, 15.) The contract, which is attached as an exhibit to the Amended Complaint, states that it is by and between Covert and "Nathan Hunt on behalf of Jonathan Long" as the "client." (Doc. No. 33-1, at 1.) The contract was signed by a Covert representative and by Hunt for the "client." (*Id.* at 6.) The stated goals of the investigation were to "[c]onduct comprehensive search [and] gather information for pending divorce suit." (*Id.* at 1.) Hunt advised Covert on what the issues were and what type of information was needed, but neither Hunt nor the plaintiff instructed Covert's investigators as to how to do their jobs (Doc. No. 33 ¶¶ 17, 18.) The plaintiff left the state to stay with family in North Carolina while Covert conducted its investigation. (*Id.* ¶ 19.)

Bo Rice, the investigator designated by Covert to perform the investigation, installed two surveillance video cameras in government utility rights of way—one across the street from Julie Long's house and one that was apparently trained on the home of Simone Ledbetter, a friend of Julie Long's. (*Id.* ¶¶ 24–25, 66, 87–88.) As part of his investigation, Rice also placed a vehicle tracking device on a vehicle owned by Jonathan Long but driven by Julie Long. (*Id.* ¶ 98.) Any information obtained by Covert in conducting its investigation and, specifically, related to the placement of the video cameras was relevant to the pending divorce and child custody proceedings and was communicated to the plaintiff only through his attorney. (*Id.* ¶ 21.) The plaintiff never received information directly from Covert, and he did not receive "real-time" information or "regular updates" about his wife's activities from either Covert or his attorney. (*Id.* ¶¶ 21–23.)

On March 25, 2021, Nathan Hunt filed a "Motion to Remove Children from Order of Protection and for Pendente Lite Visitation" in the plaintiff's pending divorce case. (*Id.* ¶ 32; *see also* Doc. No. 33-3.) This motion relied on information relayed directly to Hunt by Rice that was obtained from his investigation, including specific dates and times between March 7 and March 23, 2021 when Julie Long had left the plaintiff's and her minor children home alone for extended periods of time. (Doc. No. 33 ¶¶ 33–34.) The plaintiff was not aware of "the specific dates and times" until he received a copy of the motion from his attorney. (*Id.* ¶ 35.)

Meanwhile, however, on March 17, 2021, Simone Ledbetter found one of the video cameras and took it to the CPD, where she spoke with Officer LaJoie and filed a report.[1] (Doc. No. 33 ¶¶ 24, 27–28.) LaJoie went to Ledbetter's residence the next day to take photographs of the location where the camera had been found. (*Id.* ¶ 29.) While there, he spoke with Ledbetter and Julie Long, who was also there from whom he learned about the OOP in place against Jonathan Long. (*Id.* ¶¶ 29–30.) LaJoie "added Jonathan D. Long as a suspect." (*Id.* ¶ 30.)

On March 29, 2021, Ledbetter emailed to LaJoie a copy of the motion Hunt had filed in the Long divorce case, highlighting the section including the dates and times the Longs' minor children were left unattended. (*Id.* ¶ 36.)

LaJoie called the plaintiff on March 31, 2021. (*Id.* ¶ 37.)[2] LaJoie told the plaintiff that he was investigating a "possible violation" of the OOP and noted that the question of whether it had been violated was a "gray area." (*Id.* ¶ 38.) LaJoie asked the plaintiff how the dates in the motion were obtained. (*Id.* ¶ 40.) Jonathan Long told LaJoie that his attorney had hired a private

---

[1] The Amended Complaint does not explain this, but LaJoie's Case Summary states that Ledbetter told him she was going through a divorce and believed that her husband might have "placed the camera in the yard to monitor her while he was out of state." (Doc. No. 33-4, at 1.)

[2] The plaintiff has manually filed an audio recording of this telephone call.

investigator to obtain information relevant to the divorce and specifically for the purpose of obtaining additional child visitation for Jonathan Long. (*Id.* ¶ 42.) He told LaJoie that he was out of state to avoid potential legal issues during the investigation and that the private investigator gave information to his attorney, Hunt. (*Id.* ¶ 43–44.) He emailed LaJoie a copy of the Covert contract. (*Id.* ¶ 59.)

The crux of the plaintiff's allegations is that LaJoie "intentionally misrepresented the information provided by Mr. Long in this telephone call in the case summary and incident report created by Defendant LaJoie" "as part of his investigation." (*Id.* ¶¶ 46, 99–100.) The allegedly false representations in LaJoie's Case Summary include statements that Jonathan Long told him that (1) the private investigator provided the details supplied in the motion filed by Hunt to "his attorney and himself" (*id.* ¶ 49); (2) Jonathan Long received "regular updates" regarding Julie Long and her whereabouts (*id.* ¶ 51); and (3) he received "updates of the investigation through his attorney" (*id.* ¶ 53). The plaintiff also alleges that the Case Summary falsely states that the private investigator contract was "between" Covert, Hunt, and Jonathan Long. (*Id.* ¶¶ 55–57.) According to the plaintiff, LaJoie knew that statement was false, because Jonathan Long told LaJoie that his attorney had hired a private investigator and LaJoie was in possession of a copy of the contract with Covert, which states that it is "with Nathan Hunt, Mr. Long's attorney" and was signed by Hunt, not Jonathan Long. (*Id.* ¶¶ 58–61.)

The plaintiff also complains that LaJoie "omitted from his reports" that he went to Simone Ledbetter's residence on March 17, 20201 and "omitted information regarding the conversation he had with Julie Long." (*Id.* ¶ 31.)

LaJoie went to Julie Long's residence on April 1, 2021 and searched for another video camera, which he found across the street from her house in a utility right of way. (*Id.* ¶¶ 63–64,

66.) LaJoie told Julie Long and Ledbetter, who was also present, that the video camera belonged to a private investigator hired by Jonathan Long's attorney and that "it was legit." (*Id.* ¶¶ 68–71.) The plaintiff complains that LaJoie falsely stated in his report that he "noticed" a camera when he actually "intentionally and actively searched" for the camera. (*Id.* ¶ 65.) He also complains that LaJoie omitted from his reports the involvement of the individual on whose property the second camera was located, the handling of the camera by various people, and the fact that the "integrity and chain of command of the camera" was "breached." (*Id.* ¶¶ 84, 85–86.)

On April 2, 2021, LaJoie spoke with Bo Rice, who confirmed that both cameras were his and that he had placed them in the locations where they were found. (*Id.* ¶ 88.) Rice told LaJoie that he did not update Jonathan Long directly but that he updated Long's attorney. (*Id.* ¶ 89.) In his Case Summary and associated April 2, 2021 Incident Report, LaJoie falsely stated that Rice told him that he updated Jonathan Long "on the findings of the investigation." (*Id.* ¶ 94–95; Doc. No. 33-4, at 2; No. 33-5, at 4.)

Based on LaJoie's investigative materials, a Montgomery County Grand Jury returned an indictment charging Jonathan Long with aggravated stalking, a felony, in violation of Tenn. Code Ann. § 39-17-315; electronic tracking of a motor vehicle, a misdemeanor, in violation of Tenn. Code Ann. § 39-13-606; and violating an order of protection, a misdemeanor, in violation of Tenn. Code Ann. § 39-13-113. (Doc. No. 33 ¶ 101.) According to the plaintiff, the Grand Jury's probable cause finding was based in part on the Case Summary and April 2, 2021 Incident Report created by LaJoie during his investigation and which contained "false statements [and] omissions." (*Id.* ¶ 102.)

LaJoie arrested Jonathan Long on April 16, 2021 based on the "falsely secured" indictment. (*Id.* ¶ 104.) LaJoie took the plaintiff into custody for booking, and Jonathan Long spent six to eight

hours in the Montgomery County Jail before bonding out. (*Id.* ¶¶ 105. 111.)

The OOP was dismissed by agreed order on June 21, 2021. (*Id.* ¶ 112.) The criminal charges against Jonathan Long were dismissed by motion of the State on December 16, 2021. (*Id.* ¶ 117.)

## II.      PROCEDURAL HISTORY

The plaintiff filed his original Complaint on April 14, 2022, in response to which the defendants filed a Motion to Dismiss. The plaintiff thereafter sought and was granted leave to amend his pleading to address deficiencies identified in the first Motion to Dismiss. The Amended Complaint, filed on July 11, 2022, states claims based on the above-referenced factual allegations against LaJoie in both his individual capacity and official capacity under 42 U.S.C. § 1983 (Counts I and II); against LaJoie, in his individual capacity, under state law for false arrest/false imprisonment, malicious prosecution, and intentional infliction of emotional distress (Counts III, IV, and V); and against the City, under § 1983, for inadequate training, supervision, or discipline of the officers of the CPD (Count III).

The defendants thereafter filed their Motion to Dismiss Amended Complaint and supporting Memorandum, invoking Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. Nos. 37, 40.) The plaintiff filed his Response in opposition to the defendants' motion (Doc. No. 42), and the defendants have filed a Reply (Doc. No. 45).

## III.     STANDARD OF REVIEW

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing

that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679; *Twombly*, 550 U.S. at 556. According to the Supreme Court, "plausibility" occupies that wide space between "possibility" and "probability." *Iqbal*, 556 U.S. at 678. If a reasonable court can draw the necessary inference from the factual material stated in the complaint, the plausibility standard has been satisfied.

Generally, if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). At the same time, however, it has long been the rule that a court may consider, not only the complaint and exhibits attached to it, but also exhibits attached to a defendant's motion to dismiss, "so long as they are referred to in the Complaint and are central to the claims contained therein." *Brent v. Wayne Cty. Dep't of Human Servs.*, 901 F.3d 656, 694 (6th Cir. 2018) (citation omitted). A court may also consider public records without converting a Rule 12(b)(6) motion into a Rule

56 motion. *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008) (citation omitted).

## IV.   DISCUSSION

### A.   The Claims Against the City

The defendants argue that the Amended Complaint fails to allege facts sufficient to state a claim under § 1983 against the City.

The Amended Complaint purports to state a claim against the City based on "municipal and supervisory liability." (Doc. No. 33, at 17.) In support of such a claim, it first states that the plaintiff needs to take discovery of the City's policy and procedure manuals to "determine inadequate policies and instructions provided to officers which can rise to the level of deliberate indifference"; to determine whether the City has "a deficient internal affairs/disciplinary procedure which would be the cause of Defendant LaJoie not being afraid to lie under oath"; to examine LaJoie's disciplinary file to determine whether the City has ignored prior complaints or poor evaluations of LaJoie; and to find out whether some "supervisor" aided LaJoie or "approved the false information." (Doc. No 33 ¶ 153(a)–(d).) The Amended Complaint also asserts that the City "lacked safeguards to prevent officers from going to the grand jury to indict citizens who have not committed a crime." (*Id.* ¶ 154.) Acknowledging the absence of actual evidence that the City has adopted inadequate policies or procedures, the Amended Complaint states, "pursuant to Fed. R. Civ. P. 11(b)(3), it is believed that" the allegations regarding inadequate policies and procedures "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." (Doc. No. 33 ¶ 153.)

The Amended Complaint also asserts in a wholly conclusory fashion that the City "failed to provide adequate training, supervision and discipline" "in regards to false arrest, false imprisonment, and malicious prosecution"; that the City was "aware of training issues with Defendant LaJoie"; and that it was "deliberately indifferent to the known consequences of its

failure to adequately train, supervise and discipline" CPD police officers "in regards to false arrest, false imprisonment, and malicious prosecution." (*Id.* ¶¶ 156–58.)

For a municipality to be liable under § 1983, a plaintiff must show that, "through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." *Alman v. Reed*, 703 F.3d 887, 903 (6th Cir. 2013) (quoting *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)). A plaintiff may do this by showing that the municipality had a "policy or custom" that caused the violation of his rights. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). There are four methods of showing the municipality had such a policy or custom: the plaintiff may prove "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Jackson v. City of Cleveland*, 925 F.3d 793, 828 (6th Cir. 2019) (quoting *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013)).

This standard must also be applied in conjunction with the pleading standard outlined above. Under *Twombly*, a complaint must be dismissed for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. That is, "a plaintiff's obligation [under Rule 8] to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" is not enough to avoid dismissal. *Id.* at 555 (citations omitted). Even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted).

Here, the plaintiff effectively admits in the Amended Complaint that he has no evidence of the existence of unconstitutional or inadequate municipal policies or procedures. Instead, the plaintiff *believes* that discovery will reveal the existence of such unconstitutional or inadequate policies. "The mere fact that someone believes something to be true," however, "does not create a plausible inference that it is true." *In re Darvocet Prods. Liab. Litig.*, 756 F.3d 917, 931 (6th Cir. 2014) (citing *Twombly*, 550 U.S. at 551). In addition, as the Sixth Circuit has recognized, under *Twombly* and *Iqbal*, "[t]he plaintiff may not use the discovery process to obtain these facts [to support his claims] after filing suit." *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1051 (6th Cir. 2011). Instead, if the complaint does not satisfy Rule 8 from the outset, the plaintiff "is not entitled to discovery, cabined or otherwise." *Iqbal*, 556 U.S. at 686.

Similarly, while the Amended Complaint asserts that the City was "aware of training issues with Defendant LaJoie" and was "deliberately indifferent to the known consequences of its failure to adequately train" (Doc. No. 33 ¶¶ 157, 158), the pleading does not contain actual *facts* to support these conclusory assertions. The "inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1988). To show such deliberate indifference, the plaintiff generally must allege "prior instances of unconstitutional conduct" showing that the City "ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Plinton v. Cty. of Summit*, 540 F.3d 459, 464 (6th Cir. 2008). Alternatively, he may show "a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation." *Id.* (quoting *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 409 (1997)).

In this case, the plaintiff has alleged *no facts* showing deliberate indifference to the known or obvious deficiencies in training. Instead, the Amended Complaint, insofar as it is directed to the City, contains nothing more than the "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" and "legal conclusion[s] couched as a factual allegation[s]" that the Supreme Court has held "do not suffice" to state a claim for which relief may be granted. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

The § 1983 claims against the City are not supported by actual facts and will be dismissed for failure to state a claim for which relief may be granted.[3] The official-capacity claims against LaJoie, which the plaintiff concedes are redundant of the claims against the City, will likewise be dismissed. Because the plaintiff confirms in his Response to the Motion to Dismiss that the state law claims are asserted against LaJoie in his individual capacity only, the dismissal of the § 1983 claims against the City will result in the dismissal of all claims against the City.

**B.    The Section 1983 Claims Against LaJoie**

*1.    Absolute Immunity*

Defendant LaJoie[4] argues, first, that he has absolute immunity from liability for any claims arising from his grand jury testimony or preparatory activities leading up to that testimony, under

---

[3] The plaintiff's invocation of Rule 11 is unavailing. For one thing, the case to which the plaintiff cites, *Brown v. Cassens Transp. Co.*, 546 F.3d 347 (6th Cir. 2008), does not make any reference to *Twombly*, and it predates *Iqbal*. In addition, the plaintiffs in *Brown* argued that the district court should have afforded them discovery to "flesh out the details" of their fraud allegations before dismissing their RICO claims under Rule 9. The court took note of that argument but did not reach the question of whether Rule 11(b)(3) "may relax Rule 9(b)'s particularity requirement," because it found that the plaintiffs adequately pleaded a pattern of racketeering activity for purposes of their RICO claim, even without consideration of the dismissed allegations. *Brown*, 546 F.3d at 349 n.4. The plaintiff here has not asserted any fraud claims, and Rule 8, rather than Rule 9, is at issue.

[4] Having determined that the claims against the City must be dismissed, the court will refer to LaJoie, in the singular, as the "defendant" for the remainder of this opinion.

*Rehberg v. Paulk*, 566 U.S. 356 (2012). He is correct as to *Rehberg*'s holding. *See id.* at 369 ("[A] grand jury witness has absolute immunity from any § 1983 claim based on the witness' testimony. . . . [T]his rule may not be circumvented by claiming that a grand jury witness conspired to present false testimony or by using evidence of the witness' testimony to support any other § 1983 claim concerning the initiation or maintenance of a prosecution."). The plaintiff here, however, does not bring a claim based on LaJoie's grand jury testimony or preparation for his grand jury testimony. The plaintiff, in fact, disclaims any knowledge as to whether LaJoie even testified before the grand jury. (*See* Doc. No. 42, at 2–3.) The court, therefore, rejects the defendants' assertion that LaJoie is entitled to absolute immunity from liability under § 1983 under *Rehberg*.

2. *Section 1983 Claims*

A false arrest claim requires, among other elements, that "the arresting officer lacked probable cause to arrest the plaintiff." *Voyticky v. Vill. of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005). A federal malicious prosecution claim similarly requires, among other elements, that the defendant officer "helped start a prosecution against [the plaintiff] without probable cause." *Howse v. Hodous*, 953 F.3d 402, 408 (6th Cir. 2020), *cert. denied*, 209 L. Ed. 2d 252 (Mar. 8, 2021). The "decisive Fourth Amendment question" for both of Long's § 1983 claims against LaJoie is whether LaJoie had probable cause to believe that Long had committed the crimes charged in the indictment and for which he was arrested and detained. *Weser v. Goodson*, 965 F.3d 507, 513 (6th Cir. 2020).

As a general rule, a grand jury indictment establishes probable cause. *See Barnes v. Wright*, 449 F.3d 709, 716 (6th Cir. 2006) ("[I]t has long been settled that the finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause." (internal quotation marks and citation omitted)). There are, of course, exceptions to this general rule. Notably, the Sixth Circuit has recognized that a plaintiff may "overcome the presumption of probable cause created by [the] indictment," where he shows that

> 1) a law-enforcement officer, in the course of setting a prosecution in motion, either knowingly or recklessly makes false statements (such as in affidavits or investigative reports) or falsifies or fabricates evidence; (2) the false statements and evidence, together with any concomitant misleading omissions, are material to the ultimate prosecution of the plaintiff; and (3) the false statements, evidence, and omissions do not consist solely of grand-jury testimony or preparation for that testimony . . . .

*King v. Harwood*, 852 F.3d 568, 587 (6th Cir. 2017).

In this case, for purposes of his motion to dismiss the § 1983 claims on this basis, LaJoie does not contest that the Amended Complaint adequately alleges that LaJoie set in motion the prosecution of Jonathan Long. As set forth above, it is clear that the allegedly false statements—which are contained in LaJoie's Case Summary and Incident Report—do not consist solely of his grand jury testimony or preparation for such testimony. The defendant argues here that the plaintiff's claims should nonetheless be dismissed, because the allegedly false statements either were not false or were not material to the grand jury's findings and, likewise, that the alleged omissions emphasized in the Amended Complaint were not material to the charges against the plaintiff. (Doc. No. 40, at 9–19.) Although the defendant's Motion to Dismiss enumerates and discusses each of the allegedly false statements highlighted in the Amended Complaint in order to refute or attempt to refute whether they were actually false[5] or material, the Motion to Dismiss does not actually touch upon the elements of the charged offenses, for purposes of showing

---

[5] Some of the allegedly false statements were clearly neither false nor material, such as LaJoie's representation that the contract with Covert was between Covert *and* Hunt *and* Jonathan Long. In fact, as set forth above, it is clear from the face of the contract that Hunt, the lawyer, signed the contract "on behalf of" Jonathan Long. In other words, the contract indicates that Hunt entered it as Long's agent, for purposes of binding Long. *See Corp. Flight Mgmt., Inc. v. Tal Aviation, S.A.*, No. M2018-01492-COA-R3-CV, 2019 WL 4052493, at *4 (Tenn. Ct. App. Aug. 28, 2019) ("Agency is a relationship between a principal and an agent in which the principal gives the agent authority to act on the principal's behalf, subject to the principal's control, and the agent consents to do so." (citing *Savage v. Cty. of Memphi*s, 464 S.W.3d 326, 332 (Tenn. Ct. App. 2015) (internal quotation marks omitted)).

whether the allegedly false statements were material to those charges.[6] That omission significantly undermines LaJoie's argument that the alleged misrepresentations and omissions were not material. *See, e.g.*, *Logsdon v. Hains*, 492 F.3d 334, 341 (6th Cir. 2007) (noting that whether an officer has probable cause to make an arrest depends on the elements of the charge as defined by state law).[7]

Notably, "stalking" is defined as a "willful *course of conduct* involving repeated or continuing *harassment* of another individual that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested, and that actually causes the victim to feel terrorized, frightened, intimidated, threatened, harassed, or molested." Tenn. Code Ann. § 39-17-315(a)(4) (emphasis added). Although a "course of conduct" includes "acts in which the defendant *directly, indirectly, or through third parties*, by any action, method, device, or means, . . . monitors, observes, [or] surveils . . . a person," *id.* § 39-17-315(a)(1) (emphasis added), the term "harassment" is expressly defined to exclude from its scope "constitutionally protected activity or conduct that serves a legitimate purpose." *Id.* § 39-17-315(a)(3). In other words, that a defendant is engaged in constitutionally protected conduct or conduct that serves a legitimate purpose is not merely an affirmative defense; such conduct falls instead outside the scope of the

---

[6] Although under Tennessee law "each count of a multiple-count indictment is a separate indictment," *State v. Welch*, 586 S.W.3d 399, 402 (Tenn. Crim. App. 2019) (citation and internal quotation marks omitted), neither party distinguishes among the charges in the indictment for purposes of their probable cause arguments.

[7] The defendants reference the stalking statute in their Reply, and they also argue for the first time in their Reply that the Amended Complaint fails to state a claim for false arrest, because the plaintiff does not allege that he was arrested without appropriate *process*. (*See* Doc. No. 45, at 2 (citing *Cross v. Metro. Gov't*, No. 3-12-1109, 2014 U.S. Dist. LEXIS 175356, *14 (M.D. Tenn. 2014)).) Arguments raised for the first time in a reply brief are generally deemed waived, as the opposing party has no real opportunity to contest them. *Accord Palazzo v. Harvey*, 380 F. Supp. 3d 723, 730 (M.D. Tenn. 2019) (Crenshaw, C.J.) (citing *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008)).

definition of stalking. *See Purifoy v. Mafa*, 556 S.W.3d 170, 191 (Tenn. Ct. App. 2017) (recognizing that "the statutory definition of harassment 'does not include constitutionally protected activity or conduct that serves a legitimate purpose'" (citing Tenn. Code Ann. § 39-17-315(a)(3)).

Thus, although surveillance by a third party private investigator could still be attributed to the defendant who hired the investigator, such surveillance is not illegal if it is for a legitimate purpose—such as the preparation of a motion in a child custody proceeding showing that one's spouse is leaving the couple's minor children unattended for substantial periods of time. Although LaJoie included in his Case Summary Jonathan Long's statement to him that his attorney had hired a private investigator "as part of an effort for Mr. Long to have the protection order . . . amended to allow unsupervised visits [with] his daughters" (Doc. No. 33-4, at 1), he did not reference the information included in the motion filed by Hunt, even though he was in possession of a copy of the motion. Moreover, LaJoie stated in his investigatory materials that the plaintiff was speaking directly with the private investigator and receiving regular updates from the private investigator regarding his wife's activities. At this juncture, the court finds that the plaintiff's allegations are sufficient to support an inference that LaJoie's misrepresentations regarding the plaintiff's direct contacts with the investigator and the degree to which he received updates about the investigation were material to the grand jury's finding that the surveillance was not—or at least not entirely—conducted for a legitimate purpose and, therefore, that there was probable cause for the aggravated stalking charge and alleged violation of the OOP.

In sum, the court finds that the plaintiff has adequately alleged facts to rebut the inference of probable cause created by the indictment and to support his § 1983 claims: that LaJoie knowingly or recklessly made false statements regarding Jonathan Long's direct contacts with the

private investigator; that the false statements combined with the omission of the evidence that the investigation was for a legitimate purpose were material to the ultimate prosecution of the plaintiff; and that the false statements did not consist solely of grand-jury testimony or preparation for that testimony. *King*, 852 F.3d at 587.

### 3. Qualified Immunity

That conclusion does not entirely resolve LaJoie's motion, as he also argues in the alternative that he is entitled to qualified immunity, because the Amended Complaint fails to plead facts demonstrating that he violated Long's clearly established constitutional or statutory rights. (Doc. No. 40, at 19.)

A defendant's entitlement to qualified immunity is a "threshold question to be resolved at the earliest possible point." *Wesley v. Campbell*, 779 F.3d 421, 433 (6th Cir. 2015) (citation omitted). That point is "usually summary judgment and not dismissal under Rule 12," *id.*, but it is nonetheless well established that the defense of qualified immunity can properly be asserted in a Rule 12 motion. *See, e.g.*, *Peatross v. City of Memphis*, 818 F.3d 233, 240 (6th Cir. 2016) ("Although a motion pursuant to Rule 12(b)(6) invites an inquiry into the legal sufficiency of the complaint, not an analysis of potential defenses to the claims set forth therein, dismissal nevertheless is appropriate when the defendant is entitled to a meritorious affirmative defense such as qualified immunity.").

"The qualified-immunity doctrine shields government officials performing discretionary functions from civil liability unless their conduct violates clearly established rights." *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 680 (6th Cir. 2013) (citation omitted). In considering a qualified immunity defense at the motion to dismiss stage, the Sixth Circuit applies a "two-tiered inquiry." *Wesley v. Campbell*, 779 F.3d 421, 428 (6th Cir. 2015) (quoting *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013)). "The first step is to determine [whether] the facts

alleged make out a violation of a constitutional right." *Id.* If the plaintiff has shown a violation of a constitutional right, then "[t]he second [step] is to ask if the right at issue was 'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it." *Id.* "Both inquiries must be resolved in [the plaintiff's] favor for the claim to proceed." *Id.* at 429. Under "longstanding principle," "'clearly established law' should not be defined 'at a high level of generality.'" *White v. Pauly*, 580 U.S. 73 (2017) ) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). Rather, "the clearly established law must be 'particularized' to the facts of the case." *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). At the same time, the Sixth Circuit has warned that granting a Rule 12(b)(6) motion to dismiss on the basis of qualified immunity may be inappropriate when the "clearly established" inquiry turns on "case-specific details that must be fleshed out in discovery." *Crawford v. Tilley*, 15 F.4th 752, 765 (6th Cir. 2021).

As set forth above, the court has found that the plaintiff has adequately alleged facts showing that he was indicted, arrested, and prosecuted without probable cause. Moreover, it was clearly established at the time that an arrest that was not supported by probable cause violates the Fourth Amendment. *See Wright v. City of Euclid*, 962 F.3d 852, 875 (6th Cir. 2020) ("[T]he right to be free from arrest without probable cause is a quintessential example[] of [a] clearly established constitutional right." (internal quotation marks and citations omitted)); *Stahl v. Coshocton Cty.*, 754 F. App'x 335 (6th Cir. 2018) ("It is a well-settled principle of constitutional jurisprudence that an arrest without probable cause constitutes an unreasonable seizure in violation of the Fourth Amendment."). Likewise, the Sixth Circuit has repeatedly held that individuals have a clearly established Fourth Amendment right to be free from malicious prosecution by a defendant who has 'made, influenced, or participated in the decision to prosecute the plaintiff' by, for example, 'knowingly or recklessly' making false statements that are material to the prosecution either in

reports or in affidavits filed to secure warrants." *King*, 852 F.3d at 582–83(6th Cir. 2017); *see also Gregory v. City of Louisvill*e, 444 F.3d 725, 758 (6th Cir. 2006) (finding it clearly established that "[p]olice officers cannot, in good faith, rely on a judicial determination of probable cause when that determination was premised on an officer's own material misrepresentations to the court").

The plaintiff alleges that LaJoie knowingly made false statements in his Case Summary and Incident Report and that these false statements were material to the grand jury's finding of probable cause and, thus, to the plaintiff's prosecution. LaJoie argues in only the most cursory fashion that he is entitled to summary judgment. (*See* Doc. No. 40, at 19 ("Officer LaJoie respectfully requests dismissal of the claims against him based on qualified immunity, considering that the Amended Complaint fails to plead facts demonstrating that he violated any clearly established Constitutional or statutory right of the Plaintiff."); Doc. No. 45, at 6 ("Further, considering that the Amended Complaint fails to adequately plead any Constitutional violation, Officer LaJoie reiterates that he has qualified immunity.").) The court finds at this stage in the proceedings that there is a material factual dispute as to whether LaJoie knowingly made false statements in his investigative materials that were material to the prosecution of Jonathan Long. Based on the facts as alleged in the Amended Complaint, LaJoie is not entitled, at this stage, to qualified immunity.

### 4.    State Law Claims

The defendants' Motion to Dismiss does not address the state law claims against LaJoie. Because the court will deny the motion, insofar as it is directed to the federal claims over which the court has original jurisdiction, the court will continue to exercise jurisdiction over the supplemental state law claims.

**V.      CONCLUSION**

For the reasons set forth herein, the court will grant in part and deny in part the defendants'
Motion to Dismiss the Amended Complaint. All claims against the City of Clarksville and the
official-capacity claims against LaJoie will be dismissed, but the motion will be denied, insofar as
it seeks dismissal of the claims against Officer LaJoie in his individual capacity.

An appropriate Order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge